**ROWAN & HOPE et al. v. VALADEZ et al.**

No. 12508.

Court of Civil Appeals of Texas.

San Antonio.

April 15, 1953.

Rehearing Denied May 27, 1953.

396

Lewright, Dyer, Sorrell & Redford, Corpus Christi, Lloyd & Lloyd, Alice, for appellants.

Perkins, Floyd & Davis, Kenneth Oden, Alice, Kirkham & Graham, Corpus Christi, for appellees.

NORVELL, Justice.

This is an appeal by Rowan & Hope and Carl Wallen from a judgment rendered after a jury trial of three consolidated causes. The basis of the lawsuit was a collision between a truck owned by Rowan & Hope and an automobile driven by Mildred Paisley. Jose Maria B. Valadez was standing near the place of collision and was killed by being struck by one of the vehicles immediately after the impact. Based upon jury findings that the drivers of both the truck and the automobile were guilty of negligence proximately causing the death of Valadez, judgment was rendered in favor of his widow and children and against Rowan & Hope (a partnership composed of J. V. Rowan and Alvin C. Hope), Carl Wallen, the driver of the truck, Mildred Paisley and Jack Paisley, her husband, in the following amounts: Anita Valadez (widow), $13,324, Patricia Valadez, $1,200, Gavino Valadez, $3,000, and Ana Maria Valadez, $5,400. Said parties Valadez were also awarded an additional $5,000 for conscious pain and suffering undergone by Jose Maria B. Valadez prior to his death. Ivey Buchanan and Champ Buchanan also recovered judgment for $393.50 against Rowan & Hope and Carl Wallen.

During the course of the trial, appellants introduced in evidence a portion of a statement made prior to trial by Ivey Buchanan. Thereafter her attorney tendered the entire statement which was admitted in evidence over appellants' objection. This action of the court is urged as reversible error by appellants' first point.

The collision occurred on the afternoon of March 12, 1951, at the intersection of U. S. Highway No. 281 and the Palito Blanco Farm Road south of Alice, Texas. Both the truck and the automobile driven by Mildred Paisley were traveling in a northerly direction toward Alice. Shortly before the collision, the truck attempted to negotiate a left-hand turn off the highway onto the Palito Blanco Road, which crossed the highway at right angles and ran east and west. Jose Maria B. Valadez was standing to the south of the farm road and west of the highway when struck by the colliding vehicles.

Upon the trial Mrs. Buchanan testified that prior to the collision she was seated between Jack Paisley and his wife in the front seat of a Plymouth automobile being driven by Mrs. Paisley; that they were following the Rowan & Hope truck on the highway at a speed of about fifty miles per hour; that she was watching the truck prior to the collision and did not see the driver of the truck extend his left arm or indicate his intention of making a left hand turn; that the collision occurred on the west side of the center line of the highway; that "the truck had us blocked there, we could not go either way * * * the truck turned in front of us," and that at the time of the collision the Paisley car was not "in the act of passing the truck." Mrs. Buchanan further testified that Mrs. Paisley was not under the influence of intoxicating liquor.

Upon cross-examination, Mrs. Buchanan was questioned about a statement she had previously given and parts of it were introduced in evidence for impeaching purposes. In the statement signed by Mrs. Buchanan it was said that the Paisley car came up behind the truck travelling about sixty miles an hour and started to pass on the left; that she (Mrs. Buchanan) was watching the rear of the trailer of the truck outfit as it had a pipe hanging out from it and could not say if the truck driver made a left-hand signal or not, and that she observed that Mr. and Mrs. Paisley had been drinking

some, but that they did not drink anything while she was with them. ·

Counsel for the Paisleys thereafter offered the statement in its entirety and it was admitted in evidence over the objections of the Valadez plaintiffs as well as those of Rowan & Hope and Carl Wallen.

The parts of the statement which appellants say were highly prejudicial to them are the following:

"When I (Mrs. Buchanan) saw that the truck was going to turn I said, 'Watch that truck it is going to turn' just about this time Mrs. Paisley started applying the brakes and attempting to stop. We were not able to avoid the collision and the right front portion of our car struck the left rear part of the trailer. * * * As near as I can tell we just came up behind this truck-trailer and it started its left turn, we were not able to stop or avoid the collision, which resulted in our car striking the trailer."

██ Appellants contend that the admission of these statements violated the rule of Houston & Texas Central R. Co. v. Roberts, 101 Tex. 418, 108 S.W. 808, which proscribes conclusions of a witness upon mixed questions of law and fact. We are unable to agree with appellant's contention. As a general rule, if one party introduces a part of a statement, the opposing party may introduce the balance of the statement. This rule is subject to the limitation that the part secondly introduced must bear some reasonable relationship to the first part and be in explanation thereof. International & G. N. R. Co. v. Landa & Storey, Tex.Civ.App., 183 S.W. 384; Sovereign Camp W. O. W. v. Martin, Tex.Civ.App., 211 S.W. 270; Booth v. Crosby, Tex.Civ. App., 248 S.W. 417; Friesenhahn v. Tips Engine Works, Tex.Civ.App., 283 S.W. 341; Texas Employers Ins. Ass'n v. Mc-Norton, Tex.Civ.App., 92 S.W.2d 562; Imperial Life Ins. Co. v. Thornton, Tex.Civ. App. 138 S.W.2d 295; 17 Tex.Jur. 374, Evidence, § 129; McCormick, Admitting and Excluding Evidence, 31 Tex.Law Review, 128, loc. cit. 154.

It seems that the remainder of the statement introduced by the Paisleys and objected to by appellants bears some reasonable relationship to the portion thereof first introduced by them for the purpose of impeaching Mrs. Buchanan. The statement in its entirety purports to give Mrs. Buchanan's version of the events leading to the collision. When part of a statement is used for impeaching purposes, the courts do not apply a strict rule of pertinency to the balance of the statement. "The simple rule, in the form to-day most commonly enforced, that 'the whole of what was said at the same time on the same subject' may be put in, has proved easily workable, and has been attended by no technical refinements in its use." VII Wigmore on Evidence (3d Ed.) 523, 527, § 2113. We do not construe that portion of the statement wherein it is said that "we were not able to stop or avoid the collision" as an attempt to pass directly upon the culpability or lack thereof on the part of the driver of the Paisley car.

It would further seem that even if the statements contained in the written instrument signed by Mrs. Buchanan be considered as containing an inadmissible legal conclusion that the driver of the Paisley car was without fault and could not have avoided the collision, the error admitting them would be harmless in that the jury did not find in accordance therewith, but found that the collision was not unavoidable and that Mrs. Paisley, the driver of the automobile, was negligent in a number of particulars, proximately causing the collision. The evidence of Mrs. Buchanan which was damaging to appellants was that given upon the trial of the case relating to the alleged failure to the truck driver to give a left-hand turn, and not her statements made prior to the trial, which related to the manner in which the Paisley car had been driven. Rule 434, Texas Rules of Civil Procedure. Appellants' first point is overruled.

██ By their second and third points, appellants assert that the judgment must be reversed because counsel for the Paisleys asked Carl Wallen, the truck driver, if it were not a fact that State Highway Patrol-

man Brimhall had given him a ticket for making an improper left-hand turn. Before an objection was made, Wallen answered that he had been given a ticket. Appellants moved for a mistrial but the court overruled the motion and instructed the jury not to consider the answer of the witness. In our opinion no reversible error is disclosed. There are a number of circumstances discussed in the briefs which we believe have no bearing upon the true issue presented. For instance, the attorney for appellants stated to the court, in the absence of the jury but with all counsel being present, that Brimhall had given Wallen a ticket but that he considered this inadmissible in evidence and requested the court to so instruct all attorneys in the case. The court acceded to this request. The subsequent action of counsel for the Paisleys in making the proscribed inquiry cannot be attributed to the Valadez appellees. It cannot be said that by the actions of their counsel they have forfeited their right to the judgment, so to speak. Woodard v. Texas & P. Ry. Co., 126 Tex. 30, 86 S.W.2d 38. Similarly, after the witness had answered the improper question, the trial judge not only instructed the jury not to consider the answer but indicated a willingness to allow appellants to show that the charge filed by Brimhall was dismissed, but appellants insisted that they should be allowed to show that the county attorney in charge of the prosecution of the offense stated that the complaint should be dismissed as "he was convinced that the evidence was such that the jury should not return a verdict of 'Guilty' in the case." This, the trial judge refused to permit. The pertinent record therefore simply shows that one of appellants, as a witness, answered an improper question before objection was made; that the answer indicated that a police officer had given him a ticket for allegedly making an improper turn, and that the court instructed the jury not to consider the answer.

Few trials are completed in which some similar charge to disregard testimony is not given by a trial judge. As a general rule such instruction will render the error harmless. The same is true in this case. The officer Brimhall was called as a witness in the case and testified in detail as to his investigation of the collision. He did not arrive at the scene of the accident until some thirty or forty minutes after the collision and consequently did not purport to be an eye witness. His factual findings were all set forth in his testimony and it cannot be said that the repetition of a conclusion of his by appellant, in response to an improper question, was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Appellants' second and third points are overruled. Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191; Tennessee Dairies v. Seibenhausen, Tex.Civ.App., 99 S.W.2d 323; Casstevens v. Childre, Tex. Civ.App., 235 S.W.2d 703.

■ By their fourth and fifth points, appellants complain of the trial court's failure to submit their specially requested issue No. 22. This issue related to the defense of "sole cause," and was as follows:

"Requested Special Issue No. 22.

"Do you find from a preponderance of the evidence that any two or more of the acts of omission or commission inquired about in the two or more Special Issues Nos. 15, 18, 22, 25, 28 and 31, so answered by you in the affirmative, if you have so answered, acting together and concurring, were not the sole proximate cause of the collision involved herein? Answer 'They were not the sole proximate cause,' or 'They were the sole proximate cause.'

"We, the jury, answer:———"

The special issues referred to in the requested issue inquired of actions or omissions of the driver of the Paisley car, i. e., (15) Was the car being operated at an excessive rate of speed? (18) Was the driver under the influence of intoxicating liquor? This was an evidentiary issue rather than an ultimate fact issue. Benoit v. Wilson, Tex., 239 S.W.2d 792; Scott v. Gardner, 137 Tex. 628, 156 S.W.2d 513, 141 A.L.R. 50. (22) Did the driver fail to keep a proper lookout? (25) Did the driver fail to keep the car under proper control? (28) Was the automobile attempting to pass the truck at a road intersection?

And (31) Did the driver of the automobile fail to timely apply the brakes? As to each of the acts or omissions inquiry was made as to whether the same constituted the sole proximate cause of the collision. Although the jury answered Issues Nos. 15, 18, 22 and 28 in the affirmative, it found against appellants on the accompanying sole proximate cause issues.

The court instructed the jury that "by the term, 'unavoidable accident' is meant an accident or event which occurred without negligence on the part of either the deceased, Jose Maria Valadez, or the driver of the Paisley automobile, or the driver of the Rowan and Hope truck."

Appellants contend that as this definition was not restricted to the negligence, if any, of Valadez or the driver of the Rowan & Hope truck, they were in effect deprived of their pleaded defense that the acts or omissions of the driver of the Paisley automobile constituted the sole proximate cause of the collision.

We agree with appellants that it is somewhat incongruous from their standpoint to argue to a jury that one and only one of the alleged acts or omissions of Mrs. Paisley was a sole proximate cause and yet be deprived of the opportunity of arguing directly in support of a submitted issue that a combination of failures on her part constituted a sole proximate cause of the collision and excluded any act or omission of the truck driver as being *a* proximate cause. Of course, this argument could be and undoubtedly was made in an effort to secure negative answers to the proximate cause issues submitted in connection with the alleged negligence of the driver of the truck, but the contention here relates to the asserted right to have an issue in the form above set out submitted to the jury. It is our opinion, in accordance with the authorities which have come to our attention, that appellants' defense that a combination of acts or omissions by Mrs. Paisley precluded an act or omission of the truck driver from being a proximate cause was properly submitted by the proximate cause issues relating to the alleged acts or omissions of the truck driver. There seems to be no precedent supporting the giving of the issue requested by appellants and in the absence thereof we are unwilling to say that the court committed reversible error in overruling appellants' request. It was pointed out by this Court in Kuemmel v. Vradenburg, Tex.Civ.App., 239 S.W.2d 869, 873, that the rebuttal defense of "sole proximate cause" was an anomaly and largely a creature of precedent. (See also, comments of Leon Green, 28 Tex.Law Review 480.) The term, "sole cause" is perhaps less misleading. A "sole cause" of an event need not be a negligent act or omission. When used to designate a rebuttal defense, the term "sole proximate cause" is redundant, for a cause which excludes all other causes must necessarily be a "close" cause and not a "remote" one. The practical test of foreseeability to determine closeness as distinguished from remoteness may be neither logical nor practical when used in connection with the rebuttal issue of "sole proximate cause" as was pointed out by Mr. Justice Pope in Kuemmel v. Vradenburg, above cited. Appellants' "combination theory" presents innumerable difficulties of a practical nature when considered with the presently applicable theories of special issue submission. The following authorities to our mind support the method of submission employed by the trial court. As to submission of specific acts or omissions of negligence, Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517; 24 Tex. Jur. 452, § 3. As to submission of "sole proximate cause," Sproles v. Rosen, 126 Tex. 51, 84 S.W.2d 1001; Southland Greyhound Lines v. Cotton, 126 Tex. 596, 91 S.W.2d 326; Hicks v. Brown, 136 Tex. 399, 151 S.W.2d 790; A. B. C. Storage & Moving Co. v. Herron, Tex.Civ.App., 138 S.W.2d 211. See also, quotation from brief in Dodd v. Burkett, Tex.Civ.App., 160 S.W. 2d 1016, contending for the "combination" theory. However, this contention was not accepted by the Court. We overrule appellants' fourth and fifth points.

We also overrule appellants' sixth and seventh points, upon authority of Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449, 140 A.L.R. 1301, and Dallas Railway & Terminal Company v. Bailey, Tex., 250 S.

W.2d 379. These points were submitted in connection with those relating to "sole proximate cause" and complain of the sufficiency of the definition given by the trial court as to "unavoidable accident" which has been heretofore set out.

By their eighth point appellants contend that the trial court erred in not instructing the jury that in the event minor female children marry before reaching their majority they would "have no right to continued expectation of contribution from their father." Two of the minor plaintiffs below, Gavino and Ana Maria Valadez were female children. No authority supporting the restrictive instruction is cited. The cases of Houston Gas & Fuel Co. v. Perry, 127 Tex. 102, 91 S.W.2d 1052; West Texas Coaches v. Madi, Tex.Com. App., 26 S.W.2d 199; Wells v. Henderson, Tex.Civ.App., 78 S.W.2d 683, wr. ref., and Gulf Coast & Santa Fe Ry. Co. v. Houston, Tex.Civ.App., 45 S.W.2d 771, seemingly support the instruction given by the trial court. Appellants' eighth point is overruled.

Appellants' ninth, tenth and eleventh points assert that the judgment must be reversed because the trial court gave an instruction to the jury on Sunday. There is authority for the proposition that had the main charge of the court been delivered upon Sunday, a reversible error would be presented. Guerrera v. State, 136 Tex.Cr. R. 411, 125 S.W.2d 595; 39 Tex.Jur. 877, Sundays and Holidays, § 15. The record here discloses, however, that the charge of the court was delivered to the jury on Saturday. The jury returned a verdict on Sunday, which contained inconsistent answers. This was pointed out to the jury by the judge, as he is required to do by the provisions of Rule 295, Texas Rules of Civil Procedure.

The court may receive a verdict upon Sunday, 39 Tex.Jur. 879, Sundays and Holidays, § 16, and it follows that the rules applicable thereto, including Rule 295, are effective on Sunday. "And it is generally recognized that when the case has been submitted to the jury before Sunday, the Court may give on Sunday additional instructions to the jury then deliberating upon it." 50 Am.Jur. 859, Sunday and Holidays, § 74. Especially is this true when the rules relating to the receiving of jury verdicts authorize such practice. Appellants' ninth, tenth, and eleventh points are overruled. See also, 60 C.J. 1144, Sunday, § 103.

By their twelfth and last point, appellants assert that the award of damages, totalling $22,924, was grossly excessive. The evidence discloses that Jose Maria B. Valadez was fifty-nine years old when he was killed and had a life expectancy of over eighteen years. He had been married for a period of twenty-five years. His wife was forty-two years old at the time of the trial. He left four children, aged twenty-two, nineteen, twelve and six years, respectively. The oldest child had completed her high school education when her father was killed. The nineteen-year-old son was, however, compelled to drop out of high school and seek employment. There is evidence in the record that the deceased was a strong, large man and had been continuously employed for years. At the time of his death he was working for the King Ranch, and prior thereto had been employed by the Texas Agricultural and Industrial College at Kingsville, Texas. His monetary earnings were not large. At the time of his death he was drawing $66 per month in cash and a ration allowance estimated at a value of $25 per month. There is evidence that his cash contributions to his family's upkeep amounted to approximately $50 per month in addition to rations. The sum of $50 per month for eighteen years, the life expectancy of the deceased, will not total the sum awarded by the jury, but the members of the jury in fixing the pecuniary loss were not restricted to a mathematical formula. They could properly consider and credit the evidence that Jose Maria B. Valadez had maintained a family for a period of twenty-five years, provided for the sustenance of the members thereof, counseled and advised with his wife and children and had provided educational facilities for the latter, as their needs required. They were authorized to estimate the value of these contributions and services. The amount of damages to be

awarded in a case of this kind is primarily a matter for the jury to determine. In case of abuse and the return of a grossly excessive or inadequate award, this Court will intervene, in accordance with recognized principles of law. However, in the case now before us, we hold that the jury did not abuse its discretion and appellants' twelfth point is overruled. Greathouse v. Fort Worth & Denver City Ry. Co., Tex. Com.App., 65 S.W.2d 762; Dixon v. Samartino, Tex.Civ.App., 163 S.W.2d 739; Dallas Railway & Terminal Co. v. Bishop, Tex. Civ.App., 203 S.W.2d 651.

We have carefully examined all of appellants' points which have been fully and completely briefed, but have concluded that none of them presents a reversible error and accordingly the judgment of the trial court is affirmed.